# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL DAY ) | |
| ) | Cause No: 21-cv-1452 |
| Plaintiff, ) | |
| ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| CARBONDALE PARK DISTRICT ) | |
| Serve at: ) | |
| 108 N. Williams Street ) | |
| Carbondale, Illinois 62901 ) | |
| Defendants. ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES Plaintiff Michael Day ("Plaintiff"), by his attorneys, and for his complaint against Defendant Carbondale Park District ("Defendant"), states as follows:

## INTRODUCTION

This matter arises under Title VII of the Civil Rights Act as amended, 42 U.S.C. ¶2000e et. seq., the Illinois Human Rights Act, 775 Ill. Comp. Stat. Ann. 5/1-101, et. seq., and the Fourteenth Amendment to the United States Constitution. Plaintiff was one Defendant's most senior and experienced managerial employees. Plaintiff was also Defendant's only Black managerial employee. In sum, Defendant paid Plaintiff less than other white managerial employees with similar or less experience. When Plaintiff opposed Defendant's illegal practices, Defendant illegally retaliated against Plaintiff, which culminated in his constructive discharge on October 1, 2020.

## JURISDICTION AND VENUE

1. Plaintiff invokes this Court's Jurisdiction under 28 U.S.C. §1331, 1343(a) and 42 U.S.C. §2000e-5 to hear and decide claims under federal law. Plaintiff invokes the supplemental

1

jurisdiction of this Court pursuant to 28 U.S.C. §1367(a) to hear and decide Plaintiff's claims under Illinois state law.

2.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and 42 U.S.C. §2000e-5(f)(1)(B)(3) because all events giving rise to this action occurred within the Southern District of Illinois.

3.  On December 1, 2020, Plaintiff cross filed a charge of discrimination against the Carbondale Park District with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") alleging discrimination due to race and retaliation. Plaintiff received the Notice of Dismissal from the IDHR on September 17, 2021. Plaintiff files this action within 90 days of receipt the notice. Plaintiff has complied fully with the administrative exhaustion requirements of Title VII and the Illinois Human Rights Act.

## PARTIES

4.  Plaintiff Michael Day is a resident of Illinois and resides in Carbondale, Illinois which is located within the Southern District of Illinois.  Plaintiff is Black.

5.  Defendant Carbondale Park District is an Illinois municipal corporation that provides recreational activities to the citizens of Carbondale, Illinois, and the surrounding area. Defendant has the capacity to sue and be sued and is located in Carbondale, Illinois. Defendant can be served at its main administrative offices located at 108 N. Williams Street, Carbondale, Illinois 62901.

## FACTS APPLICABLE TO ALL COUNTS

6.  Plaintiff began his employment with Defendant in 1995.

7.  Plaintiff was Defendant's only Black manager during Plaintiff's employment with Defendant.

8. Plaintiff always performed his job duties for Defendant in a satisfactory manner.

9. Plaintiff received regular cost of living and merit-based raises while he was employed with Defendant.

10. In 1998, Plaintiff received a promotion to the position of Golf Operations Superintendent and became a salaried employee with Defendant.

11. Plaintiff regularly received good evaluations and reviews from his supervisors while employed with Defendant.

12. During the period relevant to this cause of action, Plaintiff had more seniority and work experience than Defendant's white managerial employees.

13. In 2004, Plaintiff discovered Defendant paid him less than other white managerial employees with similar or less experience. Subsequently, Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights. Subsequently, the Illinois Human Rights Commission made a finding in his favor and the parties settled the matter.

14. Ms. Kathy Renfro was the Executive Director for Defendant and was Plaintiff's supervisor in 2020.

15. Defendant's Board of Commissioners ("Board") is constituted of duly elected Commissioners who at all times relevant to this cause of action served as employees and agents of Defendant and had supervisory authority over Plaintiff.

16. In April 2020, on Ms. Renfro's recommendation, Defendant placed Plaintiff on unpaid furlough five days a week. However, Defendant placed its white managerial employees on furlough only one day per week.

17. Defendant placed Plaintiff on an additional month of full-time furlough in May 2020. Defendant failed to get the approval of the Board when it extended Plaintiff's furlough in violation of Defendant's policies and procedures.

18. Plaintiff also discovered Defendant did not allow Plaintiff to accept offers of work outside of his employment with Defendant while Defendant allowed similarly situated, white employees to accept offers of work outside of their employment with Defendant.

19. Plaintiff suspected Defendant treated him differently than similarly situated, white employees because of his race and questioned whether Defendant was underpaying him again.

20. On May 25, 2020, Plaintiff made a Freedom of Information Act ("FOIA") request. Plaintiff asked for information about the base salaries and merit raises for all of Defendant's managerial employees.

21. Ms. Renfro partially responded to Plaintiff's FOIA request on June 25, 2020 but failed to send all the documents outlined in the request.

22. On June 12, 2020, instead of supplementing its responses to Plaintiff's FOIA request, Defendant offered Plaintiff voluntary retirement. Plaintiff declined the offer.

23. When Defendant did not comply with Plaintiff's initial FOIA request, Plaintiff sent another request on June 30, 2020.

24. Instead of a reply to the FOIA request, Plaintiff received a second voluntary retirement offer from Defendant on July 1, 2020. The second offer required Plaintiff to waive any legal claims against Defendant.

25. Once again, Plaintiff requested Defendant comply with the FOIA request.

26. On July 6, 2020, Defendant sent additional documents in response to Plaintiff's FOIA request. Defendant's response demonstrated Defendant once again paid similarly situated,

white managerial employees more money than Plaintiff and offered similarly situated, white managerial employees a larger percentage of a merit raise than Plaintiff.

27. Specifically, the records showed, from 2010 until October 2020, Defendant paid white managerial employee, Trey Andersen, who had less seniority and less experience than Plaintiff, more than Plaintiff for the same or similar work.

28. Further, the records showed, from 2010 until October 2020, Defendant paid white managerial employees, Trey Andersen, Ed Robinson, and Jill Childers, who had less seniority and less experience than Plaintiff, a larger percentage of a merit raise than Plaintiff for the same or similar work.

29. On July 9, 2020, Plaintiff declined Defendant's second offer for voluntary retirement.

30. After Plaintiff declined Defendant's second voluntary retirement offer, Defendant retaliated against Plaintiff.

31. First Defendant nitpicked Plaintiff's work repeatedly and wrote him up for the first time in his 25 years of employment with Defendant. Defendant then locked Plaintiff out of Defendant's administrative offices and did not permit Plaintiff to retrieve his mail.

32. Defendant made it impossible for Plaintiff to do his job. As a result, Plaintiff was forced to resign from his employment with Defendant on October 1, 2020, which constituted a constructive discharge.

33. Defendant's ongoing racial discrimination and disparate pay caused Plaintiff mental anguish, stress, and emotional distress.

## VIOLATIONS OF LAW

### Count I:42 U.S.C. §1983: Equal Protection

34. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

35. As described in more detail above, Defendant Carbondale denied Plaintiff equal protection of the law in violation of his rights under the Fourteenth Amendment of the Constitution of the United States by subjecting him to discrimination due to his race.

36. The misconduct described in this Count was motivated by racial animus and constituted purposeful discrimination.

37. This misconduct described in this Count was undertaken by Defendant's employee Ms. Renfro, and its agents on the Board within the scope of their employment or agency and under color of law such that their employer, Defendant is liable for their actions.

38. As described above, employee's agents and officers of Defendant, paid Plaintiff less money than similarly situated, white employees for the same or similar work throughout his employment and paid similarly situated, white managerial employees a larger percentage of a merit raise than Plaintiff due to his race.

39. Defendant engaged in similar behavior against Plaintiff in 2004 evidencing an ongoing and longstanding culture, policy, practice, or custom of discrimination against Plaintiff due to his race.

40. The misconduct described in this Count was undertaken pursuant to the culture, policies, customs, and practices of Defendant in the manner described more fully above.

**Count II: Title VII – Race Discrimination**

41.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

42.     Plaintiff is an employee as defined by 42 U.S.C. § 2000e(f)

43.     Defendant is an employer as defined by 42 U.S.C. § 2000e(b).

44.     Defendant's employee Kathy Renfro was Plaintiff's supervisor and an employee and agent of Defendant.

45.     Defendant's Board was comprised of officers and agents of Defendant and had supervisory power over Plaintiff.

46.     As described above, Defendant through its officers, employees and agents engaged in intentional racial discrimination in the terms and conditions of Plaintiff's employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

47.     As described above, employee's agents and officers of Defendant, paid Plaintiff less money than similarly situated white employees for the same or similar work throughout his employment and paid similarly situated, white managerial employees a larger percentage of a merit raise than Plaintiff due to his race, evidencing an ongoing and longstanding culture, policy, practice or custom of discrimination against Plaintiff due to his race.

48.     As described above, employees and agents were aware that Plaintiff was being underpaid due to racial discrimination but failed to take reasonable corrective measures to remedy the ongoing underpayment of Plaintiff for same or similar work done by other white employees of Defendant evidencing an ongoing culture, policy, practice or custom of discrimination against Plaintiff due to his race.

49. As described above, employees and officers of Defendant, denied Plaintiff the opportunity to accept additional part time work outside his work hours with Defendant, while allowing other white managerial employees to accept additional part time work outside their work hours evidencing an ongoing culture, policy, practice or custom of discrimination against Plaintiff due to his race.

### Count III: Title VII – Retaliation

50. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

51. Plaintiff is an employee as defined by 42 U.S.C. § 2000e(f)

52. Defendant is an employer as defined by 42 U.S.C. § 2000e(b).

53. Defendant's employee Kathy Renfro was Plaintiff's supervisor and an employee and agent of Defendant.

54. Defendant's Board were officers and agents of Defendant's and had supervisory power over Plaintiff.

55. As described above, Defendant engaged in intentional racial discrimination in the terms and conditions of Plaintiff's employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

56. As described above, Defendant Carbondale took adverse employment actions against Plaintiff and retaliated against Plaintiff by subjecting Plaintiff to unwarranted disciplinary action, putting Plaintiff on unpaid and full-time furlough, interfering with Plaintiff's ability to do his job, and eventually causing Plaintiff to voluntarily quit, which constituted a constructive discharge.

57. Defendant retaliated against Plaintiff for:

      a.    his opposition to the ongoing discriminatory culture, policies, customs, and procedures in place at Defendant as practiced and implemented by Defendant's employees, agents and Board; and/or

      b.    making a FOIA Request to obtain information to confirm his suspicion that Defendant once again underpaid him in comparison to Defendant's similarly situated white managerial employees; and/or

      c.    refusing to accept discriminatory voluntary retirement offers Defendant did not offer to all qualified employees.

### Count IV: Illinois Human Rights Act - Discrimination Due to Race

58.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth therein.

59.    Plaintiff is an employee, within the meaning of the IHRA, 775 ILCS 5/2-101(A)(1)(a).

60.    Defendant is an employer within the meaning of the IHRA, 775 ILCS 5/2-101(B)(1)(c).

61.    At all times relevant herein, Ms. Renfro was Plaintiff's supervisor and an employee or agent acting on behalf of Defendant.

62.    At all times relevant herein, the Board and its members were agents or officers acting on behalf of Defendant.

63.    Defendant acted with respect to the term's privileges and conditions of Plaintiff's employment on the basis of unlawful discrimination due to race.

64.    Defendant caused Plaintiff, Defendant's only Black managerial employee to be paid less than its white managerial employees.

65. Defendant was aware of the unlawful discriminatory culture, policies, and practices in place at Defendant that caused Plaintiff to be paid less than its white managerial employees, but Defendant failed to take reasonable corrective measures in violation of the IHRA, 775 ILCS 5/2-102(A).

66. Further, Defendant denied Plaintiff the opportunity to accept additional work outside his employment with Defendant, while allowing other white managerial employees to accept work outside their employment and placed Plaintiff on unpaid furlough for longer than similarly situated white employees evidencing an ongoing culture, policy, practice, or custom of discrimination against Plaintiff due to his race.

### Count V: Illinois Human Rights Act – Retaliation

67. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth therein.

68. Plaintiff is an employee within the meaning of the IHRA, 775 ILCS 5/2-101(A)(1)(a).

69. Defendant is an employer within the meaning of the IHRA, 775 ILCS 5/2-101(B)(1)(c).

70. At all times relevant herein, Ms. Renfro was Plaintiff's supervisor and an employee or agent acting on behalf of Defendant.

71. At all times relevant herein, the Board and its members were agents or officers acting on behalf of Defendant.

72. As described above, Defendant Carbondale took adverse employment actions against Plaintiff and retaliated against Plaintiff by subjecting Plaintiff to unwarranted disciplinary action, putting Plaintiff on unpaid and full-time furlough, interfering with Plaintiff's ability to do

his job, and eventually causing Plaintiff to voluntarily quit, which constituted a constructive discharge.

73.  Defendant retaliated against Plaintiff for:

  a.  his opposition to the ongoing discriminatory culture, policies, customs and procedures in place at Defendant as practiced and implemented by Defendant's employees, agents and Board; and/or

  b.  making a FOIA Request to obtain information to confirm his suspicion that Defendant once again underpaid him in comparison to Defendant's similarly situated white managerial employees; and/or

  c.  refusing to accept discriminatory voluntary retirement offers Defendant did not offer to all qualified employees.

74.  These actions are in violation of the IHRA, 775 ILCS 5/6-101(A).

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, awarding lost wages and benefits, front wages, emotional distress damages, compensatory damages, pre-and-post judgment interest, and attorney's fees and costs, as well as any other relief that this Court should find necessary and proper.

## JURY DEMAND

75.  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues triable by a jury.

    Respectfully Submitted:

    By: */s/ Sarah Jane Hunt*
    Sarah Jane Hunt, 63899
    Kennedy Hunt, P.C.
    4500 West Pine Blvd.
    St. Louis, MO 63108
    (314) 872-9041
    (314) 872-9043 fax
    sarahjane@kennedyhuntlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on January 18, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorneys of record, as follows:

D. Brian Smith, #6287431
Jonathan A. Mitchell, #6281995
FEIRICH/MAGER/GREEN/RYAN
2001 West Main Street
P.O. Box 1570
Carbondale, Illinois 62903
Phone: 618-529-3000
Fax: 618-529-3008
bsmith@fmgr.com
jmitchell@fmgr.com
**Counsel for Defendants**

    */s/ Sarah Jane Hunt*_____